## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| DOUGLAS M. ADAMS and | ) | No. 08 B 20217 |
| LEANNE ADAMS, | ) | |
| | ) | |
| Debtors. ) | | Judge Goldgar |

## MEMORANDUM OPINION

This matter is before the court on the motion of John Gierum, trustee of the bankruptcy estate of debtors Douglas M. Adams and Leanne Adams, for leave to sell the estate's interest in certain property. The Adamses have objected to the motion. The objection raises a question that appears to be one of first impression in this circuit: when a chapter 7 trustee in a non-surplus case proposes to sell estate assets, does the potential distribution of the proceeds to creditors holding nondischargeable claims, a distribution that would reduce the debtor's post-bankruptcy liability to those creditors, give the debtor standing to object to the sale?

The answer to that question is no. The Adamses accordingly lack standing to object to the sale, and Gierum's motion will be granted.

### 1. Jurisdiction

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(a) and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (N).

## 2. Facts

The facts are drawn from the parties' papers and from the debtors' petition and schedules. No facts are in dispute. Douglas and Leanne Adams filed their chapter 7 bankruptcy petition on August 1, 2008. They filed their schedules the same day. In their Schedule B, the Adamses listed interests in several limited liability companies, including a 20% interest Douglas Adams held in Corporate Circle LLC ("the LLC"). The Adamses valued that interest at $280,000.

John Gierum was appointed interim trustee in the Adamses' case. On March 11, 2009, Gierum moved the court under section 363(b) of the Bankruptcy Code, 11 U.S.C. § 363(b), for permission to sell the estate's interest in the LLC to Grant Stover, another member of the LLC. The proposed sale price was $20,000, considerably less than the value the Adamses assigned in their Schedule B.

The Adamses objected to Gierum's motion. They asserted that the LLC owned unencumbered commercial property appraised at $1.47 million (giving Douglas Adams's 20% interest in the LLC a value of at least $294,000), and the property also generated a net annual cash flow of $100,000 or more. Therefore, the Adamses contended, the value of the estate's interest was considerably greater than the $20,000 Stover had offered.

The parties spent the rest of 2009 trying to negotiate a resolution of the Adamses' objection to the sale. Stover eventually increased his offer to $36,000, but still the parties were unable to reach an agreement. In early 2010, they concluded no resolution was possible and requested a decision on whether the Adamses had standing to oppose Gierum's motion in the first place. The standing question is

briefed and ready for decision.

### 3. Discussion

The Adamses lack standing to object to Gierum's motion for leave to sell the estate's interest in the LLC. They lack standing because they have no pecuniary interest in the bankruptcy case that the sale will directly and adversely affect.

Standing in bankruptcy cases is narrower than Article III standing. *In re Ray*, ___ F.3d ___, ___, 2010 WL 759838, at *2 (7th Cir. Mar. 8, 2010); *In re Cult Awareness Network, Inc.*, 151 F.3d 605, 607 (7th Cir. 1998). To have standing to object to a bankruptcy court's order, a person must have "a pecuniary interest in the outcome of the bankruptcy proceedings." *Cult Awareness Network*, 151 F.3d at 607; *see also Ray*, ___ F.3d at ___, 2010 WL 759838, at *3; *In re Stinnett*, 465 F.3d 309, 315 (7th Cir. 2006); *In re Andreuccetti*, 975 F.2d 413, 416 (7th Cir. 1992); *In re Ulz*, 401 B.R. 321, 327 (Bankr. N.D. Ill. 2009). Moreover, the bankruptcy court's order must "directly and adversely" affect that interest. *Depoister v. Mary M. Holloway Found.*, 36 F.3d 582, 585 (7th Cir. 1994); *Andreuccetti*, 975 F.2d at 416; *In re Drost*, 228 B.R. 208, 209 (Bankr. N.D. Ind. 1998).

A chapter 7 debtor rarely has the pecuniary interest necessary to give him standing to question the trustee's administration of the estate. The reason is that a debtor receives a distribution from the estate only after the claims of all creditors have been paid in full. *See* 11 U.S.C. § 726(a)(6). Because the liabilities of most debtors exceed their assets, however, creditors are rarely paid in full. *Ulz*, 401 B.R. at 328. If they are not, the debtor is not paid at all and so has no pecuniary

interest in how the estate's assets are administered. *Cult Awareness Network*, 151 F.3d at 607. Only if the assets are greater than necessary to pay the claims of creditors, so that a debtor has a reasonable chance of being paid the surplus, will the debtor have standing to object to the estate's administration. *Id.* at 608; *see also Stinnett*, 465 F.3d at 315; *Drost*, 228 B.R. at 210.

The Adamses have no standing to object to the proposed sale here because their liabilities greatly exceed their assets. In their schedules, the Adamses report $1,329,278 in assets but $3,055,710 in liabilities, rendering them "'hopelessly insolvent.'" *Andreuccetti*, 975 F.2d at 417 (quoting *In re El San Juan Hotel, Inc.*, 809 F.2d 151, 154-55 (1st Cir. 1987)). Assuming the 20% interest in the LLC has the value the Adamses claim, and assuming further that the interest could in fact be sold for $300,000 (or even $500,000), the sale proceeds still would not produce a surplus. The Adamses simply have no stake in how much Gierum gets for the interest in the LLC. *See Cult Awareness Network*, 151 F.3d at 608 (holding that a debtor had no standing to object to a sale where the debtor's "debts far outweigh[ed] its assets"); *In re 60 East 80th St. Equities, Inc.*, 218 F.3d 109, 115-16 (2d Cir. 2000) (same); *In re Willemain*, 764 F.2d 1019, 1022-23 (4th Cir. 1985) (same). As a practical matter, they will receive nothing no matter how much he gets.

The Adamses concede "there is no likely surplus that could result in this case." (Adams Reply at 5). Nevertheless, they claim to have a pecuniary interest in Gierum's disposition of estate assets. They note that the Internal Revenue Service and the Illinois Department of Revenue have filed priority tax claims totaling more

-4-

than $200,000, claims the Adamses themselves characterize as nondischargeable.
(*Id.*). The more money Gierum makes on the proposed sale, the more will be paid to
satisfy the IRS and IDOR claims, and the less the Adamses will owe these taxing
bodies after bankruptcy – hence the pecuniary interest in the sale price.

A few courts do endorse this theory of standing in chapter 7 cases. In
*McGuirl v. White*, 86 F.3d 1232 (D.C. Cir. 1996), the court held the debtors had
standing to challenge the trustee's fee application because all of their debts were
nondischargeable. *Id.* at 1235. As such, the court said, "any reduction in
administrative expenses will necessarily reduce the amount of non-dischargeable
claims that remain unpaid and for which the [debtors] would be liable post-
bankruptcy." *Id.* In *Mulligan v. Sobiech*, 131 B.R. 917 (S.D.N.Y. 1991), similarly,
the court found the debtor had standing to bring a claim objection because a
decision sustaining the objection would "benefit the debtor, by making funds
available to pay the non-dischargeable IRS claims." *Id.* at 920; *see also In re Moss*,
320 B.R. 143, 149-50 (Bankr. E.D. Mich. 2005); *Willard v. O'Neil (In re Willard)*,
240 B.R. 664, 668 (Bankr. D. Conn. 1999).[1/]

The problem with this theory is twofold. First, standing requires that the
court's order affect the debtor's pecuniary interest "directly and adversely."
*Depoister*, 36 F.3d at 585; *Andreuccetti*, 975 F.2d at 416; *Drost*, 228 B.R. at 209; *see
also Ray*, ___ F.3d at ___, 2010 WL 759838 at *3 (stating that a person's interest

---

[1/]     Several other courts recognize this theory in dicta. *See, e.g., United
States v. Jones*, 260 B.R. 415, 418 (E.D. Mich. 2000); *In re Curry*, 409 B.R. 831, 838
(Bankr. N.D. Tex. 2009); *In re Toms*, 229 B.R. 646, 651 (Bankr. E.D. Pa. 1999).

must be "directly affected" (internal quotation omitted)). But the effect that the Adamses and the cases supporting them describe is at best indirect: the administration of the estate produces no surplus, and so the trustee pays no money to the debtor himself, but payments the trustee makes to certain creditors arguably alter the debtor's post-bankruptcy liability to those creditors. Courts adopting the Adamses' standing theory describe this effect as "direct." *See, e.g., McGuirl*, 86 F.3d at 1235; *Moss*, 320 B.R. at 149; *Mulligan*, 131 B.R. at 920. If so, it is hard to imagine what an "indirect" effect would be.

Second, granting standing to every debtor who happens to be subject to some nondischargeable claim would interfere with the administration of chapter 7 cases. Many debtors are subject to nondischargeable claims. If every such debtor were suddenly entitled to take an active role in the trustee's administration of the case, the result would slow down the bankruptcy system and make it more costly. The Adamses' case provides a good example. Gierum first sought to sell the estate's interest in the LLC a year ago. When the Adamses objected, his motion was continued repeatedly while the parties spent the next nine months attempting without success to resolve the matter – although no creditor had objected to the sale. Yet the Adamses themselves have not offered to pay more than Gierum's proposed sale price, nor have they produced a bidder of their own willing to do so. Their sole object is to drive up the offer of the only current bidder, Stover.

The bankruptcy system works because it processes cases expeditiously, *Cult Awareness Network*, 151 F.3d at 609, and it will continue to work only as long as it does so. The public policy goal of "swift and efficient" bankruptcy administration is

"achieved primarily by narrowly defining who has standing in a bankruptcy proceeding." *In re Richman*, 104 F.3d 654, 657 (4th Cir. 1997); *see also Ray*, ___ F.3d at ___, 2010 WL 759838, at *3 (noting that limited standing ensures "bankruptcy proceedings are not unreasonably delayed by protracted litigation" (internal quotation omitted)). Adding exceptions that expand the standing of chapter 7 debtors beyond the single exception for surplus cases "would complicate the process unnecessarily." *Cult Awareness Network*, 151 F.3d at 609; *see also Richman*, 104 F.3d at 657; *Drost*, 228 B.R. at 209 (observing that narrow standing rules "promote the swift and efficient administration of the estate and avoid the needless multiplication of litigation").

Although a sale at a price higher than the one Gierum proposes might conceivably reduce the Adamses' post-bankruptcy tax liability, the fact remains that under no circumstances will they receive a distribution from the estate in this case. Because they will not, the Adamses have no standing to object to the sale.

### 4. Conclusion

The motion of chapter 7 trustee John Gierum to sell the estate's interest in Corporate Circle LLC is granted. A separate order will be entered consistent with this opinion.

Dated:  March 12, 2010

A. Benjamin Goldgar
United States Bankruptcy Judge